## FLOYD BELL v. STATE.

No. A-10826. April 15, 1948.
(192 P. 2d 714.)

Gilmer, Weaver & Kennon, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. This is an appeal by the defendant, Floyd Bell, from a conviction in the district court of Payne county of the offense of assault and battery, wherein the defendant was given the maximum punishment of 30 days imprisonment in the county jail and a fine of $100.

Two propositions are presented on behalf of defendant: First, the evidence is insufficient to sustain the conviction; second, the judgment is excessive upon any reasonable view of the evidence. These assignments will be considered together.

The defendant was an engineer with the Wolfe Construction Company and engaged in work in the city of Stillwater on October 6, 1946, at the time of the alleged assault. The prosecuting witness, Dorsey McVickers, was an itinerant barber who had been in Stillwater for about one week prior to the alleged assault, and was staying at the same rooming house where the defendant lived. During the week that McVickers had lived in Stillwater, he and defendant had become acquainted. Some time during the morning of Sunday, October 6th, under the undisputed evidence, the defendant and McVickers were visiting and a conversation arose between them as to taking a drink of whisky. The defendant informed McVickers that he had a part of a fifth of whisky in his room and invited McVickers to his room for a few drinks. They went to defendant's room and stayed for an hour or two, during which time they drank the whisky which belonged to the defendant. The prosecuting witness then suggested to defendant that if he could find some more whisky, he, the prosecuting witness, would pay for it. Accordingly, they got into the defendant Bell's automobile and drove east of Stillwater, about nine miles to purchase some whisky. At this point the evidence of the defendant and the prosecuting witness varies.

McVickers testified that he dozed off to sleep and was awakened by the defendant cutting him on the body with his pocketknife. Whereupon a fight started which lasted four or five minutes during which they rolled over in a ditch at the side of the road. The prosecuting wit-

ness said he hit the defendant above the ear causing the defendant to roll over in the ditch where defendant commenced to groan; that he told the defendant to get up and bring him to town, that he was bleeding to death. The defendant thereupon got up, got into the automobile and drove McVickers back to Stillwater and inquired at a house for the hospital, and took McVickers to the hospital.

The defendant testified that when they arrived at the bootlegger's house, the witness McVickers went into the house and returned in a few minutes with another man and a quart of whisky in his left hand. McVickers was arguing with the bootlegger about the price of the whisky. The defendant got out of the car after the argument had continued for a minute or two and told McVickers to either pay for the whisky or give it back to the bootlegger so they could return to town; that he, the defendant, tried to get McVickers back into the car and McVickers started cursing and hit him on the neck with his fist; that the defendant then got in the car and started to Stillwater; that McVickers commenced to call the defendant a coward, and cursed him and finally started striking him, which forced the defendant to stop the car; that they got out of the car and McVickers had a pair of knucks on his right hand. He struck the defendant with the knucks and knocked him over into the ditch; that he then jumped on top of defendant and started kicking him with his feet; that defendant then pulled his pocketknife, which was a small knife with about a two inch blade, and started cutting at McVickers; that he kept on slashing at him until Bell got on his feet; that by that time McVickers had started bleeding, so Bell quieted him down and put him in the car and started back to town; that on the way to town McVickers hit Bell two or three

times; that after arriving at town defendant inquired about the hospital and after it was located, he drove to the hospital and left the defendant.

The Doctor who examined McVickers' wounds at the hospital testified that he had several lacerations, the deepest of which was about three-fourths of an inch deep. That he had lost very little blood, and appeared to be in a drunken condition at the hospital. Bell was arrested on Tuesday. The deputy sheriff who made the arrest testified as to Bell's condition as follows:

"Q. When you saw Bell on Tuesday, did you notice his condition? A. He had two black eyes. Q. Anything else on his face? A. Some scratches and bruised places and cuts. Q. How about his nose? A. It looked like he had hit him on the nose. Q. And his eyes were black. A. Yes, sir. Q. How about the side of his head? A. A little scratched place. Q. Other skinned places on his head. A. Along in here and on his nose and the side of his head. Q. Pretty well skinned up and black eyes. A. Yes, sir."

From the foregoing statement it is readily to be seen that there was a conflict in the testimony of the defendant and prosecuting witness as to how the fight started. If it started in the manner testified by McVickers, then the defendant was guilty; and if the slashing with the knife was made by defendant in the manner related by him, and as a result of unlawful acts first commenced by prosecuting witness, then defendant was not guilty, because he was acting in his own necessary self-defense. This disputed testimony raised an issue of fact for the determination of the jury.

It appears that both of these men became intoxicated and each contributed to the affray because of their intoxicated condition. No charges at all were filed against

the prosecuting witness. His injuries were not much more severe than those sustained by the defendant, although they could have been serious if the knife wielded by the defendant had struck an artery.

Under all the circumstances and considering the relative injuries imposed by the parties, we have come to the conclusion that justice will be met by a modification of the judgment and sentence imposed against the defendant from a term of 30 days imprisonment in the county jail and a fine of $100, by eliminating the jail sentence and providing for the payment of the fine.

It is therefore ordered that the judgment and sentence of the district court of Payne county be modified by reducing the sentence imposed against the defendant, Floyd Bell, from 30 days' imprisonment in the county jail and a fine of $100, to a fine of $100, and the judgment and sentence as thus modified is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.